**Dated: March 24, 2008**
**The following is SO ORDERED:**

_____
George W. Emerson, Jr.
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

In re

     Hart's Manufacturing Company, Inc.       Case No. 05-32722-GWE

     Debtor.                        Chapter 11

**MEMORANDUM AND ORDER DENYING CONFIRMATION OF SALE**

       The issue before the Court is whether to confirm the sale of real property

conducted by auction pursuant to a confirmed plan of liquidation.  The issue arises out of

a motion by the Debtor-In-Possession, Hart's Manufacturing Co. ("Hart's" or "Debtor")

to set aside the auction sale because it would not be in the best interest of creditors and

because the proposed sale price is grossly inadequate.  The high bidder, Eagle Investment

Corp. ("Eagle") objects to the motion, stating that the auction should be confirmed

- 1 -

because the purchase price is fair; there is no evidence of fraud, mistake, or collusion; and confirmation of the sale protects the integrity of the liquidation process by promoting finality in judicial sales.  The first lienholder, Arkansas Development Finance Authority ("ADFA"), responds to the motion inasmuch as Eagle's high bid would be insufficient to pay of ADFA's lien.

Based upon statements of counsel, witness testimony, stipulated background facts, and the case record as a whole, the Court hereby declines to confirm the sale of the Corning Property because the sale fails to maximize creditor recovery and the proposed price is grossly inadequate.  The following findings of fact and conclusions of law are rendered in accordance with Fed. R. Bankr. P. 7052.  By virtue of 28 U.S.C. § 157(b)(2)(G), (A), and (O), this is a core proceeding.

## I.    BACKGROUND

The instant case was filed as an involuntary Chapter 7 petition on August 18, 2005.  The case was then converted to a case under Chapter 11 on September 20, 2005, and an Order for Relief was entered on the same day.  The Debtor filed a Disclosure Statement and a Summary of the Plan on December 12, 2006, and an Amended Disclosure Statement and a Plan of Reorganization were filed on February 19, 2007.  A Confirmation Order was entered on August 17, 2007.  The order confirming the plan provides, in pertinent part, for an auction of the Debtor's manufacturing facility located in Corning, Arkansas ("Corning Property") to be conducted.  It also provides for the retention of jurisdiction by the Court to determine all matters arising out of the

confirmation order.  The only other significant asset of the estate is an anticipated

Workers' Compensation bond refund, which the plan directed be used to pay

administrative expenses and the claim of the Internal Revenue Service.

Throughout the pendency of the case, Hart's continued to market the Corning

Property.  With the permission of the Court, Hart's and the real estate agency Burrow

Halsey Realty Group, Inc. listed the property for $1,650,000.  According to the testimony

of Thomas Hart ("Hart"), Secretary of Hart's, the only response was an oral offer of

$250,000, which the Debtor rejected.

After two years of unsuccessful marketing, Hart's obtained permission to auction

the property through The Maas Companies, Inc. ("Maas").  The Corning Property was

then opened for inspection and potential bidders were given an auction brochure, a

Bidder's Kit containing the Auction Terms and Conditions, and a form Sale Agreement

pertaining to the auction of the Corning Property.  Each of these documents notified the

bidder that any sale of the Corning Property was subject to Court approval.  The Auction

Terms and Conditions expressly stated in bold print, "A SUCCESSFUL BID AT

AUCTION CONSTITUTES A LEGALLY BINDING CONTRACT OF SALE.  ALL

SALES ARE FINAL, SUBJECT TO COURT APPROVAL." (Capitalization in original.)

Before the bidding was opened, the auctioneer specifically reminded the bidders that any

sale would remain subject to court approval.  Prior to the auction, Eagle also

commissioned an environmental investigation of the Corning Property at a cost of

$7,305.  The Access Agreement between Hart's and Eagle for the environmental

investigation (Ex. 6) provided for Eagle to bear all expenses of the investigation.

The auction was conducted on August 17, 2007, and Eagle had the highest bid, $250,000 plus an additional $25,000 Buyer's Premium to be paid directly to the auctioneer. Following the auction, David Libla, on behalf of Eagle, deposited $55,000 in the escrow account of the Debtor's real estate closing attorney, and both Hart, on behalf of Hart's, and Libla, on behalf of Eagle, signed the Sales Agreement. The Sales Agreement, like the Bidder's Kit, auction brochure and Auction Terms and Conditions, noted that the sale remained subject to court approval.

On October 11, 2007, Hart's filed the motion now before the court. Both Hart's motion and Eagle's objection thereto make reference to a proposed bid by MPT to purchase the Corning Property for $957,000. Hart's also filed a motion to approve a stalking horse on February 18, 2008, wherein Hart's proposed a sale of the Corning Property to MPT for $1,100,000. The Court will address the Stalking Horse Motion and any future sale of the Corning Property by separate hearing and order.

A hearing on Hart's motion to set aside the sale was held on February 19, 2008, at which time the Court took the matter under advisement. None of the parties have alleged any mistake, fraud, or collusion in the conduct of the auction.

The Corning Property is situated on approximately 24.6 acres with a 165,000 square foot manufacturing building, a storage shed, and a separate shop building. The property is subject to two duly perfected liens, the first being held by ADFA and the second by MPT Holdings, LLC ("MPT"), a Mississippi limited liability company owned by three of the four brothers who were equity security holders in Hart's. The ADFA lien is approximately $457,000 and the MPT lien is $500,000, for a total secured debt on the property of approximately $957,000. The confirmed plan provides that, upon the sale of

the Corning Property, ADFA is to be paid "its allowed, secured claim in full from the

proceeds of the sale or, to the extent such proceeds are insufficient, from MPT."


## II.      DISCUSSION

As a general rule, courts have fairly broad discretion in deciding whether to

confirm a sale of estate assets. *In re WPRV-TV, Inc.,* 983 F.2d 336, 340 (1st Cir. 1993);

*Cedar Island Builders, Inc. v. South County Sand & Gravel, Inc.,* 151 B.R. 298, 302

(D.R.I. 1993); *Jacobsohn v. Larkey*, 245 F. 538 (3rd Cir. 1917).  The over-arching

principle at confirmation is to achieve the highest price for the bankruptcy estate. *Matter*

*of Chung King, Inc.,* 753 F.2d 547, 549 (7th Cir. 1985); *In re General Insecticide Co.*, 403

F.2d 629, 631 (2nd Cir. 1968).  This goal must be balanced, however, against the need for

finality in judicial sales. *In re Webcor, Inc.,* 392 F.2d 893, 899 (7th Cir. 1968) ("If parties

are to be encouraged to bid at judicial sales[,] there must be stability in such sales and a

time must come when a fair bid is accepted and the proceedings are ended") (citations

omitted); *Chung King*, 753 F.2d at 550; *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564

(8th Cir. 1997); *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767-768 (7th Cir. 2004).

In the instant case, such finality becomes particularly important because the auction was

held pursuant to a previously confirmed plan.

The court's discretion is significantly broader when deciding whether to confirm a

sale than it would be were the court considering setting aside a sale that was previously

confirmed by the court. *Matter of Chung King, Inc.,* 753 F.2d 547, 549 (7th Cir. 1985);

*Corporate Assets, Inc. v. Paloian*, 280 B.R. 425, 429 (N.D.Ill. 2002), *aff'd* 368 F.3d 761

(7th Cir. 2004) (a court has broader discretion to consider the reasonableness of a sale

prior to its confirmation); *Cedar Island Builders, Inc. v. South County Sand & Gravel,*

*Inc.,* 151 B.R. 298, 302 (D.R.I. 1993) ("Although a bankruptcy court possessed 'broad

initial discretion in granting or denying confirmation [of a sale of assets],' this range of

discretion narrows considerably when a bankruptcy court is determining whether to set

aside a prior [sale] confirmation order.") (citations omitted); *In re General Insecticide*

*Co., Inc.*, 403 F.2d 629 (2nd Cir. 1968); *In re Blue Coal Corp.*, 168 B.R. 553

(Bankr.M.D.Pa. 1994).

Although the sale was conducted pursuant to a previously confirmed plan, this

Court still has the discretion, if not an obligation, to examine the reasonableness of the

sale, including whether the sale is in the best interest of creditors and whether the

purchase price is adequate. See *In re Food Barn Stores, Inc.*, 107 F.3d 558, 565 (8th Cir.

1997); *In re Muscongus Bay Co.*, 597 F.2d 11 (1st Cir. 1979); 50A C.J.S. *Judicial Sales* §

32.


A.      **Best Interests of Creditors**

As stated above, one of the primary aims of the sale confirmation process is to

maximize creditor recovery by looking to whether the sale is in the best interest of

creditors. *Corporate Assets, Inc. v. Paloian*, 280 B.R.425, 428 (N.D.Ill.2002), 368 F.3d

761, 767 (7th Cir. 2004); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-565 (8th Cir.

1997).  An application of the "best interest of creditors" test must look at the effect on *all*

creditors, not just general unsecured creditors.  11 U.S.C. § 101(10) (2007) provides that

"[t]he term 'creditor' means – (A) entity that has a claim against the debtor that arose at

the time of or before the order for relief concerning the debtor." See generally *In re Superior Siding & Window, Inc.*, 14 F.3d 240 (4th Cir. 1994); *In re OptInRealBig.com, LLC*, 345 B.R. 277 (Bankr.D.Colo. 2006); *In re Shockley*, 197 B.R. 677 (Bankr.D.Mont. 1996). As part of its inquiry, the Court will consider whether the sale would increase the overall assets of the estate, and whether it will increase the payoff to all creditors.

As previously noted, the estate consists of two primary assets, the Corning Property, and an anticipated refund of a Workers' Compensation bond. According to Hart, if the sale is confirmed, it would mean the estate would receive approximately $215,000 after taxes and closing costs, leaving no funds for any creditors other than ADFA, which would only receive $215,000 of its clam for $457,000. ADFA's and MPT's liens total $957,000, slightly less than four times the amount of Eagle's proposed sale price of $250,000. Even if MPT paid the outstanding balance to ADFA, as is required under the confirmed plan, ADFA would be the only fully satisfied creditor (excluding the Internal Revenue Service and administrative expenses[1]). The estate would be left with MPT's $500,000 in secured claims and approximately $4.7 million in unsecured claims. Thus, a sale to Eagle would realize no recovery for either MPT or the unsecured creditors.

The "best interest of creditors" test is in the plural. While the sale might be in the best interest of one creditor (ADFA, who is guaranteed full payment pursuant to the confirmed plan), this Court simply cannot find that a sale which provides only partial

---

[1] Pursuant to a consent order entered on August 17, 2007, and the order confirming the Chapter 11 plan, MPT agreed to subordinate its lien on an anticipated Workers' Compensation refund bond in order to pay the Internal Revenue Service's unsecured priority claim of $69,929.05. Also pursuant to the order confirming the Chapter 11 plan, MPT further agreed to subordinate its lien on the anticipated Workers' Compensation refund bond to court approved and allowed administrative expenses, up to the amount of $75,000.

payment to a single creditor, leaving all other creditors with nothing, could be deemed to be in the best interest of the creditors.  For this reason, the Court declines to confirm the sale of the Corning Property to Eagle.

### B.      Adequacy of Price

Had this Court found that the sale was not conditioned upon the reviewing authority of the Court to determine what is in the best interest of creditors, this Court would still set aside the sale based upon the gross inadequacy of price.  The existence of a mere disparity between the proposed price and that contemplated by the parties is an insufficient justification to set aside a sale.  The proposed price must be so low as to "shock the conscience" of the court.  *In re Food Barn Stores, Inc.,* 107 F.3d 558, 564 (8th Cir. 1997); *Matter of Chung King, Inc.*, 753 F.2d 547, 550 (7th Cir. 1985); see generally *Smith v. Juhan*, 311 F.2d 670, 672 (10th Cir. 1962); *In re Stanley Engineering Corp.*, 164 F.2d 316, 318-319 (3rd Cir. 1947), *cert. denied*, 332 U.S. 847 (1948);  *Raleigh & C.R. Co. v. Baltimore Nat. Bank*, 41 F.Supp. 599, 601 (D.C.S.C. 1941); *Bankers Fed. Sav. & Loan Ass'n v. House*, 182 A.D.2d 602 (N.Y.A.D. 1992); *Investors Sav. Bank v. Phelps*, 397 S.E.2d 780 (S.C.App. 1990).  Courts generally compare the proposed sale price against the appraised value of the property to determine the reasonableness of the winning bid.  *In re Stanley Engineering Corporation*, 164 F.2d 316, 318-319 (1st Cir. 1947); see also *Smith v. Juhan*, 311 F.2d 670 (10th Cir. 1962); *In re Blue Coal Corp.*, 168 B.R. 553, 564-565 (Bankr. M.D. Pa. 1994); *In re Kendall Foods Corp.*, 122 B.R. 792 (Bankr. S.D. Fla. 1990).

At the hearing, the parties introduced the deposition of the expert testimony of appraiser Larry D. Clark ("Clark").  Clark is a State Certified General Appraiser with more than 30 years of experience, particularly in the area of industrial appraisal.  As such, the Court finds that he is qualified as an expert witness to provide an opinion as to the value of the Corning Property.  As part of the appraisal, Clark utilized a sales comparison approach to determine the value of the Corning Property.  Based upon his review of prior sales of 14 similar properties, it was his expert opinion that the Corning Property was worth $1,550,000.

Hart's also entered into evidence appraisals of the Corning Property conducted by Clark  in 2006 and 2003.  The 2006 appraisal showed the Corning Property to be worth $2,800,000 (Deposition of Clark at p.6) and the 2003 appraisal estimated the property's value at $3,200,000 ( Ex. 2 to Deposition of Clark).  Clark explained that the decline in value was due in part to the sale of the machinery and equipment between the three appraisals, as well as the loss of industrial jobs to outsourcing and a general decline in the industrial sector throughout the State of Arkansas (Deposition of Clark at p. 15).  Hart's relied exclusively on the testimony of Clark that the value of the Corning Property was approximately $1.55 million.

Eagle argued that the $250,000 bid is a clear reflection of the actual fair market value of the property.  The Court cannot find sufficient evidence in the record to support this argument.  Libla testified that he had bought several properties at auction in the past, and would not have paid more than $350,000 for the Corning Property.  Although the Court assigns more weight to the appraisal and expert testimony introduced into

evidence, it should be noted that Eagle was willing to bid only $100,000 more against competing bids.

The 2007 appraisal shows a value of $1.55 million, which is more than six times the amount Eagle is asking this Court to accept. One-sixth of the property's fair market value is grossly inadequate. *In re Kendall Foods Corp.*, 122 B.R. 792, 793 (Bankr.S.D.Fla. 1990) (proposed bids of 53.7%, 42%, and 39% below fair market value, as determined by comparison of other agricultural land sold at auction in the area, was clearly 'grossly inadequate'"); *Chung King*, 753 F.2d at 550 (disparities of 8.6% or 12.5% are insufficient to be found "grossly inadequate").

Eagle also argues that Hart's even anticipated a sale price less than the liens, specifically citing to the confirmed plan and Hart's application to employ an auctioneer to sell the Corning Property, as further evidence of the presumed value of the property. Hart's motion to employ the auctioneer states, "It is not anticipated that the proceeds of sale from the Real Estate are sufficient to completely satisfy the first and second mortgages on the Real Estate." Eagle asserts that Hart's should not now be allowed to come back to the Court and seek to deny confirmation of a low-price sale that Hart's expressly contemplated. In the Court's opinion, just because the confirmed plan provided for the possibility that the auction might bring less than the total liens, doesn't make the final bid price any more reasonable. Eagle's proposed price of $250,000 is grossly inadequate, which provides a second, if not concomitant, basis for denying confirmation of the sale.

**III.   CONCLUSION**

While it is important for courts to encourage lively bidding at auctions, the Court is mindful that bidders at these sales are aware that any successful bid remains subject to court approval.  In this case, Eagle knew the sale remained subject to court approval. Eagle's position as winning bidder, however, is outweighed by the need to realize the most funds for the estate.  Allowing the sale to Eagle to go forward would result in only partial payment of a single creditor, and a net to the estate that is grossly below the actual value of the property.  Based upon the case record as a whole and for the reasons stated above, the Court declines to confirm the auction sale to Eagle Investment Corp.  Hart's motion to set aside the auction is hereby granted.